IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK RAYMOND,

              *Plaintiff,*

    v.

MICHAEL S. WAGNER,

              *Defendant.*

Civil Action No. 2:23-cv-01508

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

### I. INTRODUCTION

This dispute arises from Defendant Michael S. Wagner's ("Wagner") alleged failure to fulfill his obligations under the Membership Interest Purchase Agreement ("Agreement") that he entered into with Plaintiff Mark Raymond ("Raymond"). (ECF No. 1-1, p. 4). Raymond's Complaint asserts five claims against Wagner: (I) breach of contract, (II) unjust enrichment, (III) declaratory judgment, (IV) constructive trust, and (V) fraud in the inducement. (*Id.*). Wagner moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) (the "Motion"). (ECF No. 2). For the following reasons, the Court will grant in part and deny in part Wagner's Motion.

### II. FACTUAL BACKGROUND

Raymond and Wagner were the sole members of FIDA, LLC ("FIDA"), with each owning a 50-percent share. (*Id.* at 4). On July 5, 2022, Raymond and Wagner agreed to enter into the Agreement where Raymond agreed to sell his membership interest in FIDA to Wagner for a total

purchase price of $3,313,600 (the "Purchase Price"). (*Id.*). Section 1.03 of the Agreement bifurcates the Purchase Price into two separate payments. (*Id.*). The Agreement required Wagner to pay Raymond (1) $1,813,600 within three days after FIDA's closing (the "First Payment") and (2) $1,500,000 concurrent with the closing of the sale of Wagner's other company, Target Freight Management ("TFM") (the "Second Payment"). (*Id.*). Section 1.04 of the Agreement also provided, "Closing on all transactions contemplated in the Agreement was mandated to occur on the effective date of the Agreement, July 5, 2022." (*Id.* at 4, 15).

Before the parties executed the Agreement, Wagner represented to Raymond that the TFM sale would occur contemporaneously with Raymond's sale of his membership interest in FIDA. (*Id.* at 4). Wagner planned to use the proceeds from the TFM sale as capital to pay the Purchase Price. (*Id.*). Following the execution of the Agreement, Raymond transferred his membership interest in FIDA to Wagner. (*Id.* at 6). Wagner, in turn, made the First Payment to Raymond but not the Second Payment. (*Id.* at 5). To date, Raymond has continuously attempted to secure the Second Payment, but Wagner has not abided the requests. (*Id.*).

As a result, Raymond filed this action. (ECF No. 1, p. 1). On August 21, 2023, Wagner filed the Motion. (ECF No. 2). According to Wagner, the Second Payment has not been conveyed because his contractual obligation does not trigger until the TFM sale occurs. (ECF No. 3, p. 4 n.2).

### III.    STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must

accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. (*Id.*).

## IV.   ANALYSIS

### A.   Breach of Contract – Count I

Raymond claims that Wagner breached the Agreement by failing to make the Second Payment by the Agreement's closing. (ECF No. 1-1, p. 5). "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). Here, both parties agree that Pennsylvania law controls as reflected in the Agreement's choice of law provision. (ECF No. 1-1, p. 19); (ECF No.

3, p. 6); (ECF No. 8, p. 3).  To state a claim for a breach of contract under Pennsylvania law, a plaintiff must demonstrate "(1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (alteration to quote) (citation omitted).

At the outset, the parties do not dispute the first and third elements of a claim for breach of contract.  Neither party disputes that they both entered into the Agreement and Wagner admits he has not made the Second Payment to Raymond.  (ECF No. 3, pp. 3-4); (ECF No. 9, pp. 2-4).  So the Motion turns on the second element, that is, whether Wagner breached the Agreement by failing to make the Second Payment when the parties closed on the sale of FIDA.

"The paramount goal of contract interpretation is to determine the intent of the parties." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (citations and internal quotation marks omitted).  At the motion to dismiss stage, the Court may resolve claims involving contract interpretation if the unambiguous terms of the contract at issue bar the relief sought.  *Jaskey Fin. & Leasing v. Display Data Corp.*, 564 F. Supp. 160, 163 (E.D. Pa. 1983) ("[T]he claim may be resolved in a motion to dismiss, if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court.") (citations omitted). "[A] contract is unambiguous if it is reasonably capable of only one construction." *Tamarind Resort Assocs. v. Gov't of the Virgin Islands*, 138 F.3d 107, 110-11 (3d Cir. 1998).

Raymond contends Section 1.03 of the Agreement required Wagner to make the Second Payment "concurrent with the Closing of the transaction for the sale of TFM." (ECF No. 1-1, pp. 5, 15); *see also* (ECF No. 8, p. 4).  In his view, Section 1.04 dictates the closing date for all the

transactions contemplated in the Agreement, including the TFM sale, as July 5, 2022, the execution date of the Agreement. (ECF No. 8, p. 4). Raymond avers Wagner should have conveyed the full Purchase Price at or before July 5, 2022. (*Id.* at 5).

Wagner counters that the Agreement identifies the First and Second Payments as "separate transactions that … state different time periods following the referenced transactions to complete the respective payment installations." (ECF No. 9, p. 5). Wagner asserts that the TFM sale has yet to occur and, consequently, has not triggered his contractual obligation under the Agreement to convey the Second Payment to Raymond. (*Id.*).

Viewing the allegations in the light most favorable to Raymond, the Court holds that he has presented a legally sufficient cause of action for breach of contract. Section 1.03(a)(ii) requires Wagner to make the Second Payment concurrent with the TFM's Closing. (ECF No. 1-1, p. 15). Section 1.03 provides,

> (a)     Wagner shall Raymond the Purchase Price as follows:
>
> (i)     One Million Eight Hundred Thirteen Thousand Six Hundred and 00/100 ($1,813,600.00) in cash or other certified funds within three (3) days after Closing; and
>
> (ii) One Million Five Hundred Thousand and 00/100 ($1,500,000.00) in cash or other certified funds concurrent with Closing of the transaction for the sale of TFM.

(*Id.*). Section 1.03 does not attach a specific date to TFM's Closing. (*Id.*). Sections 1.04 and 1.05, however, make Raymond's interpretation of the Agreement plausible.

Section 1.04 states that the Date of Closing means:

> *Closing* on the *transactions contemplated* in [the] Agreement (the "Closing") shall take place *concurrently*[1] with the execution of [the] Agreement (the "Date of Closing" or "Closing Date") by exchange of documents electronically.

---

[1] Black's Law Dictionary defines concurrent as "[o]perating at the same time; covering the same matters." *Concurrent*, BLACK'S LAW DICTIONARY (11th ed. 2019).

(*Id.*) (alterations to quote and emphases added).  Section 1.03(a)(i) refers to Closing in the context of the Agreement.  (*Id.*).  Section 1.03(a)(ii) refers to Closing in terms of the TFM sale.  (*Id.*).  In conjunction with Section 1.04, both the Agreement and the TFM sale are transactions contemplated in the Agreement.  Because the TFM sale is contemplated in the Agreement, the closing of the TFM sale plausibly should have occurred concurrently with the execution of the Agreement on July 5, 2022.

Section 1.05 further affirms the plausibility of Raymond's interpretation.  Section 1.05(b) provides that, "*At or before* the [Agreement's] Closing, Wagner shall deliver to Raymond … *The Purchase Price*."  (*Id.*) (emphases added).  Section 1.05(b) does not specify that a partial amount of the Purchase Price is due at or before the Agreement of the Closing.  It seemingly states that the full amount is due.  After considering Sections 1.04 and 1.05, the Court finds that Raymond's interpretation of the Agreement alleges a plausible breach of Wagner's obligation to make the Second Payment by July 5, 2022.

In sum, Raymond has pleaded all the elements of a breach of contract claim.  The Court, therefore, will deny the Motion as to Count I.

**B.**     **Unjust Enrichment – Count II**

Raymond brings an unjust enrichment claim in the alternative if he did not sufficiently plead a breach of contract claim.  (ECF No. 1-1, p. 6).  Under Pennsylvania law, plaintiffs may not plead unjust enrichment as an alternative theory of recovery in a complaint when they acknowledge that an express contract exists between the parties.  *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d

1250, 1254 (Pa. 2006) (citations omitted); *see also Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 633 (Pa. Super. 2016) (citation omitted).

Here, Raymond *and* Wagner agree that a valid, enforceable contract exists. (ECF No. 3, pp. 9-10); (ECF No. 8, p. 4). Raymond is, therefore, barred from bringing his unjust enrichment claim. *See Schott v. Westinghouse Electric. Corp.*, 259 A.2d 443, 448 (Pa. 1969) ("[T]he quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.") (citations omitted). The Court will grant the Motion as to Count II.

### C.       Declaratory Relief – Count III

Raymond seeks a declaratory judgment adjudicating that he remains the owner of approximately 22.6% membership interest in FIDA, which equates to the unpaid portion of the Purchase Price.[2] (ECF No. 1-1, p. 8). Under the Declaratory Judgment Act, the federal judiciary may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although the Rules do not preclude declaratory judgments if other adequate remedies exist, the United States Court of Appeals for the Third Circuit directs district courts to decline to adjudicate declaratory judgments

---

[2] Raymond brought his declaratory judgment claim pursuant to Pennsylvania's Declaratory Judgments Act, 42 PA. STAT. AND CONS. STAT. ANN. §§ 7531-7541. (ECF No. 1-1, p. 8). In federal court, however, declaratory judgment actions are considered procedural. *Fed. Kemper Ins. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases."). Therefore, "federal law determines the rules to apply to a request for declaratory judgment relief." *Munich Welding, Inc. v. Great Am. Ins.*, 415 F. Supp. 2d 571, 574 (W.D. Pa. 2006) (citation omitted).

when they duplicate other claims. *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa. 2019) (citing FED. R. CIV. P. 57 and *State Auto Ins. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000)).[3]

Wagner moves to dismiss Count III on the basis that it is duplicative of Raymond's breach of contract and unjust enrichment claims under Counts I and II. (ECF No. 3, pp. 11-12). Raymond counters that Count III is not duplicative, arguing that the "claims seek entirely different remedies." (ECF No. 8, p. 9). Ultimately, the Court sides with Raymond.

Courts from our circuit, including the Western District, routinely decline issuing declaratory judgments when they are filed with breach of contract actions that require adjudication of overlapping issues. In *Baum v. Schlesinger*, No. 2:21-cv-944, 2022 WL 3716682, at *3 (W.D. Pa. May 26, 2022), home buyers brought breach of contract and declaratory judgment actions against their builder for allegedly defective and incomplete work. After finding both claims involved substantially duplicative allegations, the Court reasoned that practicality and judicial administration weighed in favor of dismissing the declaratory judgment claim. *Id.* at *7. The Eastern District of Pennsylvania similarly dismissed a claim for declaratory relief by a class of life insurance policyholders to prevent their policy rates from increasing in *In re Lincoln National COI Litigation*, 269 F. Supp. 3d 622, 627 (E.D. Pa. 2017). The Eastern District concluded, "adjudication of the [declaratory judgment claim] will necessarily require resolution of the [breach of contract claim]." *Id.* at 640. The Eastern District explained that the proper interpretation of the

---

[3] In *Summy*, the Third Circuit instructed district courts to decline exercising "discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *Summy*, 234 F.3d at 135. While the *Summy* Court addressed duplicative claims in federal and state court, district courts in the circuit have interpreted *Summy* to preclude duplicative claims in federal court. *Id.* at 131-32; *Butta*, 400 F. Supp. 3d at 231 ("Though the court addressed duplicative claims in parallel state and federal court proceedings, courts in this district interpret *Summy* to bar duplicative claims in federal court."); *see also Baum v. Schlesinger*, No. 2:21-cv-944, 2022 WL 3716682, at *6 n.9 (W.D. Pa. May 26, 2022).

life insurance policies affects both the breach of contract and the declaratory judgment claims. *See id.* at 633, 639-40.

Raymond's declaratory judgment claim is distinguishable from *Baum* and *In re Lincoln National COI Litigation* because its outcome does not depend on the adjudication of his breach of contract claim. Raymond's breach of contract claim seeks to adjudicate whether Wagner breached when he failed to convey the Second Payment at or before the Agreement's closing. The declaratory judgment claim, conversely, seeks to adjudicate whether Raymond should retain 22.6% membership interest in FIDA until Wagner conveys the Second Payment. Raymond would not have the opportunity to recover his membership interest in FIDA if judgment is entered in favor of Wagner on Raymond's breach of contract claim. In theory, Wagner could hold Raymond's membership interest in FIDA indefinitely without Raymond ever receiving the Second Payment.

Put simply, Raymond's request for remedies under the breach of contract and declaratory judgment claims are distinct, not duplicative. The Court will deny the Motion as to Count III.

### D.      Constructive Trust – Count IV

Raymond seeks a constructive trust for Wagner to convey the Second Payment or return his FIDA membership interest. (ECF No. 1-1, p. 9). However, Pennsylvania does not recognize constructive trusts as independent causes of action. *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 706 (E.D. Pa. Jan. 10, 2022) (citing *Buchanan v. Brentwood Fed. Sav. & Loan Ass'n*, 320 A.2d 117, 126 (Pa. 1974)) (other citation omitted). As such, the Court will grant the Motion as to Count IV.

### E.      Fraud In the Inducement – Count V

Raymond raises a fraud in the inducement claim based on the existence of a representation by Wagner to him prior to the execution of the Agreement.  At the same time, Raymond does not dispute the validity of the Agreement or argue that it is ambiguous.  (ECF No. 8, pp. 4-5).  Section 6.05 of the Agreement contains an integration clause, indicating to the Court that Raymond and Wagner meant for the Agreement to represent all their legal obligations to one another.  (ECF No. 1-1, p. 19).  The parol evidence rule resolves the dissonance between Raymond's positions and supports the Court dismissing the fraudulent inducement claim.[4]

The parol evidence rule declares that "[w]here parties … have deliberately put their engagements in writing, … [a]ll preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, ... [and] the writing constitutes the agreement between the parties."  *Gianni v. R. Russell & Co.*, 126 A. 791, 792 (Pa. 1924) (citations and internal quotation marks omitted).  For the parol evidence rule to apply, a writing must exist that represents the parties' entire agreement.  *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citing *Gianni*, 126 A. at 792).  Such writing exists when "the writing appears to be a contract complete in itself, importing a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement."  *Toy v. Metro. Life Ins.*, 928 A.2d 186, 204 (Pa. 2007) (citing *Yocca*, 854 A.2d at 436).  The Pennsylvania Supreme Court has held that an integration clause is a "clear sign" that the parties meant for their writing to represent their entire agreement, "express[ing their] negotiations, conversations and agreements made prior to its execution."  *Toy*, 928 A.2d 186, 204 (citing *Yocca*, 854 A.2d at 436).

---

[4] Pennsylvania courts apply the parol evidence rule.  *Toy v. Metro. Life Ins.*, 928 A.2d 186, 204 (Pa. 2007).

Nonetheless, the Pennsylvania Supreme Court has recognized limited exceptions for parties who wish to introduce parol evidence. *Toy*, 928 A.2d 186, 204-05 (citation omitted). Parties may introduce parol evidence for fraud in the execution claims. *Id.* They may not introduce the same for fraud in the inducement claims. *Id.* at 205.

Raymond's fraud in the inducement claim fails two-fold. First, the Agreement contains an integration clause in Section 6.05. Section 6.05 provides, "[t]his Agreement, the exhibits attached hereto and the agreements delivered as required hereby constitute the entire agreement of the parties … and supersedes all negotiations, preliminary agreements and all prior contemporaneous discussions and understandings of the parties." (ECF No. 1-1, p. 19). The integration clause's plain language is clear that the Agreement represents the parties' entire contract, superseding any of Wagner's alleged representations predating the Agreement. Second, the parol evidence rule applies. Raymond pleads that Wagner made the alleged fraudulent representations "[p]rior to the parties entering into the Agreement." (ECF No. 1-1, p. 10). No exception exists for Raymond to introduce these fraudulent representations. Raymond brought a fraud in the inducement claim, not a fraud in the execution claim. *See Toy*, 928 A.2d 186, 204-05. As a result, the Court will grant the Motion as to Count V.

## V.   CONCLUSION

For these reasons, the Court will grant in part and deny in part Wagner's Motion.  An order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

1/12/2024
Dated

12